# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 27, 2012

## STATE OF TENNESSEE v. JERRICO D. GRAVES

**Appeal from the Circuit Court for Montgomery County**
**No. 40900930      John H. Gasaway III, Judge**

**No. M2012-01026-CCA-R3-CD - Filed May 21, 2013**

The Appellant, Jerrico D. Graves, appeals as of right from the trial court's revocation of his probation for Aggravated Assault. Although admitting to the violation, the appellant argues that ordering the original sentence of six years to be served in the Department of Correction was not 'the right thing to do" because of his mental health issues. Following our review, we affirm the trial court's revocation of probation and the appellant's sentence to the Department of Correction.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

CHRISTOPHER CRAFT, SP. J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Roger E. Nell, District Public Defender, Clarksville, Tennessee, and Charles S. Bloodworth, Sr., Asst. District Public Defender, Clarksville, Tennessee, for the appellant, Jerrico D. Graves.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; John W. Carney, District Attorney General; and John Finklea, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Montgomery County Grand Jury returned a three count indictment against the appellant on August 8, 2009, charging him with a December 24, 2008 domestic assault, a May 30, 2009 aggravated assault on the same victim by the display of a knife, and aggravated assault by threatening her in violation of a court order. The victim is his girlfriend, the mother of his three children. On February 24, 2010, he entered a plea of guilty to the second count, aggravated assault by the use or display of a knife. Having two prior felony

convictions, he received a negotiated Range II six-year sentence in the Department of Correction, with six years immediate probation. As a result of the plea, the other two counts were dismissed. The victim was present during the plea and consented to the probation, as she and the appellant still had an on-going relationship and she wanted him working again, continuing to support her and their children.

The facts of the offense stipulated to at the time of the guilty plea were that the appellant had brandished a knife, threatened the victim with it and then had punctured a tire of her automobile. He had been in jail since the time of the assault because his competency had been at issue, and the first mental evaluation he had been given had been inconclusive. A special conditions of his probation on his guilty plea waiver was that he "must keep all mental health appointments, take his prescribed medication, and execute any medical releases to permit his probation officer to confirm the above."

On June 2, 2011, a warrant was issued for the appellant for violation of probation because of an additional arrest for a new Domestic Assault. On August 11, 2011, the appellant waived his right to a hearing on the probation violation, admitted that he was in violation, and by agreement the matter was deferred for him to attend the eight anger management classes ordered by the General Sessions Court when he was convicted of the new assault.

While this matter was taken under advisement, an additional warrant for the appellant's arrest for violation of probation was issued December 21, 2011, adding as further grounds that he had failed to provide documented employment search efforts, had moved without informing his probation officer of his new address and had failed to report as ordered. The affidavit for the warrant also stated that he "consistently becomes argumentative during the probation appointments he attends and has been asked to leave before any discussion of his supervision can be completed" and uses "verbally inappropriate language." Because of this behavior, he could not be administered drug screens, he consistently failed to provide verification of his mental health appointments and "refuses to take his psychotropic medications as prescribed." He was taken into custody January 12, 2012, and was held without bond until his violation of probation hearing on April 16th.

At the hearing, as the appellant had already agreed that he had violated his probation due to his new General Sessions conviction, the only determination to be made by the trial judge was the final disposition. The appellant testified at the hearing that he had no steady job, had not been taking his prescribed Haldol (which he stated "calms my nerves when I get upset") because his funds were "cut off" and that he had not attended the anger management classes "because I was too busy trying to do other things during the holidays." He admitted that he could have taken the classes, but that about the time he was to start he was arrested on the second warrant for violation of probation. He also stated that his trouble at the probation office was due to the "hostile environment up front." On cross-examination, he stated that he became "real rambunctious" when he is not taking his Haldol, became angry at people more quickly, had to separate himself from them and became frustrated. He also

-2-

admitted that he was doing well in the jail environment where he was receiving his medication.

The appellant's mother testified at the hearing that the appellant has a history of mental illness since age sixteen and is not always well-controlled on medication, and that "when he gets angry, it's like he can't control it." She stated that when he was forced to take his medication in the jail, he told her that "it made him feel better and he could sleep better at night, that's what he needs. He needs to be on his medication, back on his medications." She had tried to tell others what was going on with her son before he went to prison, but no one would listen, and she had no control over him because he lived with his girlfriend. He had been institutionalized before, and had been diagnosed with schizophrenia when at the "boys home."

The appellant's attorney requested that the trial judge institutionalize the appellant and then place him on a Mandatory Outpatient Treatment plan (MOT). However, he expressed concern that in the past, every time the appellant was sent to the institute when he was not taking his medicine, he was released with an aftercare program and told to take his medication. His attorney stated that "if the Court finds that there is any reasonable prospect that he will comply with his medication and his probation supervision, then I would ask that he be returned to probation supervision." Failing that, he requested that the appellant be recommended for a Special Needs facility at the Department of Correction.

The trial judge found that 1) the appellant had a health problem that needed to be addressed, 2) that no plan to address these issues outside of the Department of Correction had been suggested, 3) that the appellant "doesn't seem to have any support system and he just kind of moves around from place to place as he sees fit," and 4) that the appellant was now taking his medicine because he was required to, due to his structured environment. He therefore ordered that the appellant serve out the balance of his sentence in the Department, with a recommendation that he be evaluated for placement at the Lois M. DeBerry Special Needs Facility where he could receive structured mental health treatment. The appellant perfected a timely appeal.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the appellant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2006). The revocation of probation lies within the sound discretion of the trial court. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Stubblefield*, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, an appellant "must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The record is clear in this case that the appellant had violated his probation. This had already been agreed to by the appellant in open court in

August, 2011. Even so, he was given an opportunity to attend anger management classes ordered by the General Sessions Court because of his new assault conviction before disposition of the violation, but he failed to attend those classes or be compliant with his prescribed medication. We conclude that the trial court did not abuse its discretion in finding that the appellant violated the terms of his probation and in finding that it would be in the appellant's best interest to serve his sentence in the Department of Correction where he could be made to take his medication and receive structured mental health treatment. Accordingly, the judgment of the trial court is affirmed.

CHRISTOPHER CRAFT, SPECIAL JUDGE