FILED
06/23/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2025 at Knoxville

## STATE OF TENNESSEE v. CORBIN RAMON HIGHTIE

**Appeal from the Circuit Court for Montgomery County**
**Nos. 2018-CR-42, 2018-CR-362, 2020-CR-541    Robert Bateman, Judge**

_____

### No. M2024-01040-CCA-R3-CD

_____

The Defendant, Corbin Ramon Hightie, appeals from the Montgomery County Circuit Court's probation revocation of his ten-year sentence. The Defendant contends that the trial court erred by failing to consider alternative sentencing and by denying his request to award sentence credits for time he successfully served on probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TOM GREENHOLTZ, J., joined.

Roger Nell, District Public Defender; Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Director; and Shelby Silvey (at revocation hearing), Assistant Public Defender, for the appellant, Corbin Ramon Hightie.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Robert J. Nash, District Attorney General; Chris West and Demetrius Daniels-Hill, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In July 2018, the Defendant pleaded guilty in Montgomery County Circuit Court to possession with the intent to manufacture, deliver, or sell a controlled substance and to felony escape. In December 2020, he pleaded guilty to misdemeanor possession of a controlled substance. As a result of his conviction offenses, he received an effective ten-

year sentence suspended to supervised probation. Transcripts of the guilty plea hearings were not included in the appellate record.[1]

A probation violation report was filed alleging that (1) the Defendant had been arrested for aggravated burglary, two counts of domestic assault, driving while his license was revoked, misdemeanor possession of a controlled substance, vandalism, and traffic registration misuse, and (2) the Defendant had failed to pay probation fees. An arrest warrant for the violations was issued on January 27, 2020. An amended arrest warrant was issued on September 10 and included the Defendant's subsequent arrest for domestic assault and aggravated assault. The Defendant admitted to violating the conditions of his release, and the trial court found that the Defendant had violated the terms of probation and returned him to supervision.

A second probation violation report was filed alleging that (1) the Defendant was arrested for domestic assault, evading arrest, and driving while his license was revoked, and (2) the Defendant had failed several drug screens, failed to report his arrest, failed to provide a change of address, and failed to pay probation fees. An arrest warrant for the violations was issued on October 28, 2021. An amended arrest warrant was issued on January 11, 2022, which included the Defendant's new arrest for contempt and aggravated assault. The Defendant admitted to violating the conditions of his release, and the trial court found that the Defendant had violated the terms of probation and returned him to supervision.

On February 5, 2024, a third probation violation report alleged that the Defendant had been arrested for evading arrest, second offense driving while his license was revoked, reckless driving, and theft of property. An arrest warrant for the violations was issued on February 7.

At a July 2, 2024 probation revocation hearing, Clarksville Police Department Officer Nicholas Rodriguez testified that, while monitoring a neighborhood for drug activity, he saw a blue car with tinted windows drive into a gas station. Officer Rodriguez said that he searched for the car's registration in the police database and retrieved information about the Defendant, including the Defendant's name and physical description, and that he learned the Defendant's driver's license was revoked. Officer Rodriguez said he identified the Defendant as the car's driver. Officer Rodriguez stated that, after the

---

[1] *See* T.R.A.P. 24(b); *see also State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal, which includes the obligation to have a transcript of the evidence or proceedings prepared.); *State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023).

Defendant left the gas station and drove the car onto the road, Officer Rodriguez initiated a traffic stop, but the Defendant "took off at a high rate of speed weaving around traffic, [and went] through an intersection, recklessly." Officer Rodriguez did not pursue the Defendant but, instead, obtained a warrant for the Defendant's arrest for evading arrest, reckless driving, and driving while his license was revoked. Officer Rodriguez acknowledged that he did not have any video recordings from the incident.

The trial court found that the State proved by a preponderance of the evidence that the Defendant violated the terms of his probation by committing the offenses of evading arrest, driving while his license was revoked, and reckless driving. The State argued that despite having "ample chances on probation," the Defendant continued to commit new felony offenses, including offenses that created a danger to the public. At defense counsel's request, the court reviewed the February 5, 2024 probation violation report. Counsel noted that the report reflected periods when the Defendant had successfully complied with the terms of probation and requested that the Defendant receive sentence credit for that time. The State took no position regarding whether the Defendant should receive credit for the time he successfully served on probation.

The trial court considered that the Defendant had been charged multiple times for probation violations. The court noted that twice it had reinstated the Defendant's probation supervision after the Defendant admitted to violating the terms of probation. After considering the Defendant's probationary history, the probation violation report, and "the multiple instances of [the Defendant's] being in violation of his supervision," the court revoked the Defendant's probation, denied the Defendant's request for credit for time successfully served on probation, and ordered the Defendant to serve his original sentence in confinement. This appeal followed.

The Defendant argues that the trial court abused its discretion by failing to consider alternative punishments and by denying his request to award credit for the time he successfully served on probation. The Defendant does not contest that he violated the terms of probation but argues that, without testimony from the Defendant's probation officer, the information contained in the February 5, 2025 probation violation report was not reliable. The Defendant also argues that the court failed to consider alternative punishments because the court said it had "no choice but to revoke [the Defendant's] supervision." The State contends that the court did not abuse its discretion by ordering the Defendant to serve his full sentence and by denying sentence credit. The State cites *State v. William Connor Read* for the proposition that "'an accused, already on [suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing.'" No. M2024-00821-CCA-R3-CD, 2025 WL 502683, at *3 (Tenn. Crim. App. Feb. 14, 2025) (citation omitted), *perm. app. filed* (Tenn. Apr. 4, 2025). The State notes that the Defendant had already received a third grant of probation and was not "entitled" to a further reprieve from incarceration. We agree with the State.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58. "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id*. at 759 (citation omitted). Factors to be considered by a trial court upon revocation include a defendant's sincerity and amenability to rehabilitation. *Id*. at 758 (citation omitted).

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (Supp. 2024), -310 (Supp. 2024). When the court orders a sentence into execution, the court "may give credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that amount of time." *Id*. § 40-35-310; *see id*. § 40-35-311(e)(2) (Supp. 2024). When determining whether to "award credit for time successfully spent on probation" before revocation, a court "may consider 'the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character.'" *State v. Williams*, 673 S.W.3d 255, 260 (Tenn. Crim. App. 2023) (quoting *Dagnan*, 641 S.W.3d at 759 n.5). A court's determination whether "to award or deny credit for time served on probation" is reviewed for an abuse of discretion. *Williams*, 673 S.W.3d at 259.

The record reflects that the trial court found grounds for revocation and considered the appropriate consequence upon revocation. The Defendant does not dispute that he violated the terms of probation. The court considered the Defendant's lengthy history of

probation violations and arrests and that it had twice reinstated the Defendant's probation after a violation. This court has long held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); *see William Connor Read*, 2025 WL 502683, at *3. The court also considered the February 5, 2024 probation violation report, detailing the Defendant's alternating successful probationary periods and intermittent probation violations. Although the Defendant now questions the reliability of the probation violation report, defense counsel requested that the court consider the report and relied upon information in the report when arguing for sentence credit. Moreover, probation violation reports are properly considered as reliable hearsay, provided the opposing party has been given an opportunity to rebut the report's contents. *See State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) ("The probation report that appellant complains of is precisely the type of reliable hearsay contemplated under T.C.A. § 40-35-209(b)."); *see also State v. Gregory T. Phelps*, No. E2016-00918-CCA-R3-CD, 2017 WL 2275827, at *4 (Tenn. Crim. App. May 24, 2017) ("[R]eliable hearsay is admissible at probation revocation hearings when the opposing party has a fair opportunity to rebut any hearsay evidence.") (citations omitted), *perm. app. denied* (Tenn. Oct. 3, 2017).

The Defendant also argues that the trial court refused to consider sentencing alternatives because the court stated at the probation revocation hearing that it "ha[d] no choice" but to revoke the Defendant's probation. We do not regard the court's remark to mean that the court refused to consider appropriate sentencing options. Rather, the record reflects that the court considered appropriate sentencing factors such as the Defendant's probationary history and the numerous times the Defendant's probation was reinstated after multiple probation violations before ordering the Defendant to serve his sentence in confinement.

The trial court also considered and rejected the Defendant's request for the award of sentence credit. When considering whether to award credit for time successfully spent on probation, a court may consider the same factors it considered in determining the consequences for a probation violation. *See State v. Williams*, 673 S.W.3d 255, 260 (Tenn. Crim. App. 2023) (holding that a trial court may consider the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character when determining whether to award credit for time successfully spent on probation). The probation violation report provided a detailed outline of the Defendant's conduct during probation, and the court acknowledged the seriousness of the Defendant's prior offenses and his "multiple instances" of probation violations. The court considered the pervasiveness of the Defendant's probation violations and denied the Defendant's request for sentence credit.

Although brief, the trial court's consideration of the appropriate factors in reaching its decisions is sufficient for this court to conduct a meaningful review of the revocation decision. *See Dagnan*, 641 S.W.3d at 759. The Defendant has not shown that the court abused its discretion in revoking the Defendant's probation, refusing the Defendant's request for sentence credit, and ordering the Defendant to serve his ten-year sentence in confinement. He is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE